DECISION.
The plaintiff-appellant, Kenwood Lincoln-Mercury, Inc. ("Kenwood"), and the defendant-appellee, DaimlerChrysler Corporation ("Chrysler"), were parties to a Sales and Service Agreement ("SSA") that, inter alia, required Kenwood to make warranty repairs to Chrysler vehicles, for which Chrysler would pay Kenwood. Under the terms of the SSA, Kenwood was required to follow Chrysler's policies and procedures when submitting its claims for these payments, and the payments were contingent upon and subject to an audit by Chrysler and, possibly, to a "charge-back" if the audit demonstrated irregularities in any claim.
In the time period pertinent to the issues in the controversy subjudice, January 1, 1996, to October 31, 1997, Kenwood submitted and Chrysler paid Kenwood a total of $1,219,167 upon 7,238 warranty claims. Beginning in November 1997, Chrysler audited the claims submitted by Kenwood during those twenty-two months and, on March 10, 1998, charged back to Kenwood $32,951.
Kenwood concedes that the SSA authorized Chrysler to conduct such an audit and to charge Kenwood for claims disallowed as a result of the inspection of Kenwood's books and records regarding warranty service or allied claims. Kenwood does not dispute that Chrysler's policy manual expressly provided that all payments made to a dealer for warranty claims were tentative and subject to an audit covering any length of time Chrysler deemed appropriate.
Nevertheless, on July 23, 1999, Kenwood filed the action from which this appeal derives. In its first cause of action, Kenwood sought to recover double the amount of its actual damages ($32,951), court costs and attorney fees, upon the following allegation:
 By "charging back" plaintiff $32,951.00 in warranty claims which Chrysler had already approved and paid, Chrysler violated O.R.C. § 4517.59 which governs a franchisor's conduct toward its franchisees. Specifically, the subsections of § 4517.59 which Chrysler violated include, but are not limited to, O.R.C. § 4517.59(H), (I), and (J).
 The second cause of action asserted a claim for unjust enrichment, but was withdrawn by Kenwood in the trial court and is not a part of this appeal.
A trial to the bench began on August 28, 2000. In his opening statement, counsel for Kenwood crystallized the issues to be determined in these words:
 There [are] two primary legal contentions that the plaintiff has in this action, Your Honor. First off, that Chrysler didn't have the right to conduct this audit after a 45[-]day period had elapsed and that is based on [R.C.] 4517.59, which is in front of you, and even if Chrysler did have that right, they still had to conduct their audit and the subsequent appeal proceedings in good faith, which they failed to do.
 The trial concluded on August 31. After both parties had rested their cases, Chrysler moved to dismiss all of Kenwood's claims. The court granted that motion with respect to Kenwood's claim based on R.C. 4517.59(I), holding that Chrysler had an unequivocal right under the SSA to conduct the audit, but denied the motion with respect to Kenwood's claim under R.C. 4517.59(A), which questioned Chrysler's good faith during the audit.
On October 13, 2000, the court addressed a letter of opinion to counsel, setting forth the factual and legal conclusions at which it had arrived. The court initially restated its finding that, "beyond question," Chrysler had the right to audit Kenwood "with regard to warranty work." Ultimately, the court held that the audit had been conducted in good faith, based upon its conclusion that "no part of [R.C.] 4517.59 et seq. [had been] violated," and that the "plaintiff [had] simply failed to prove its case." Accordingly, on November 6, 2000, the court journalized its entry finding in Chrysler's favor on all claims in the complaint and dismissing the complaint with prejudice.
Kenwood's first assignment of error, that the court erred in dismissing the claim under R.C. 4517.59(I), is advanced on this contention:
 [R.C.] 4517.59(I) does not permit an automobile manufacturer to "conditionally approve" warranty claims and then audit and charge-back its dealers for previously paid warranty claims if such charge-backs occur more than forty-five days after the claim was submitted to and approved by the manufacturer.
 In support of this contention, Kenwood quotes what, in its view, are the relevant parts of R.C. 4517.59:
 Notwithstanding the terms, provisions, or conditions of any agreement, franchise, or waiver, no franchisor shall:
 * * *
 (I) Fail to approve or disapprove any warranty or recall claim submitted by a franchisee within forty-five days after receipt from the franchisee. If a claim is not approved, the franchisor shall immediately so notify in writing the franchisee who submitted the claim and shall include in the notice the specific grounds upon which the disapproval is based. [Emphasis added by Kenwood.]
 We hold that the first assignment is not well taken. In reaching this conclusion, we rely, as the trial court did, upon Kenwood's concession that Chrysler had the contractual right to audit Kenwood's claims for warranty work. The wording of the pertinent parts of R.C. 4517.59(I) makes it clear the forty-five-day provision applies to the approval or disapproval of such a claim initially. The record before us demonstrates that Kenwood transmitted its claims electronically, utilizing a system maintained by Chrysler known as "DIAL," and that Chrysler responded in the same way, usually on the day after reception. The parties agreed in the SSA that an audit could be made, and such an audit was neither proscribed nor time-limited by R.C. 4517.59. Resultantly, it cannot be said that the court's holdings were not fully supported by both the facts and the law.
Kenwood submits that, "if Chrysler [had] immediately notified Kenwood that there was a problem with any of the practices for which Kenwood was eventually charged-back * * * instead of conditionally approving [such] claims, Kenwood would have ceased such practices and * * * avoided * * * charge-backs." While this submission makes pragmatic sense, it is not tenable upon the facts and law applicable here.
Thus, upon our determination that the trial court did not err in dismissing the cause of action predicated on R.C. 4517.59(I), we overrule the first assignment of error.
The second assignment of error raises what we perceive to be the issue upon which this case actually pivots. It is as follows:
 The trial court erred in finding that Chrysler did not violate its duty of good faith to Kenwood.
 Kenwood identified good faith as a salient, perhaps the salient, issue in its opening statement. It now argues that, under R.C. 4517.59(A), a manufacturer (Chrysler) cannot place the burden of proof to verify warranty claims upon a dealer (Kenwood) or fail to follow its own policies and procedures in the course of auditing a dealer's documentation of a warranty claim.
 Chrysler acknowledges that R.C. 4517.59(A) mandates the exercise of good faith in these terms:
 Notwithstanding the terms, provisions, or conditions of any agreement, franchise, or waiver, no franchisor shall:
 (A) In acting or purporting to act under the terms, provisions, or conditions of a franchise or in terminating, canceling, or failing to renew a franchise, fail to act in good faith * * * .
 And both Kenwood and Chrysler rely upon the definition of "good faith" set forth in R.C. 4517.01(BB):
 "Good faith" means honesty in the conduct or transaction concerned and the observance of reasonable commercial standards of fair dealing in the trade as is defined in division (S) of section 1301.01 of the Revised Code, including, but not limited to, the duty to act in a fair and equitable manner so as to guarantee freedom from coercion, intimidation, or threats of coercion or intimidation * * * .
 Kenwood stresses that Chrysler's statutory duty was significant, because "franchise agreements between a manufacturer and a dealer are not the result of an equal bargaining process." Kenwood asserts that "Chrysler's warranty policies [were] so onerous as to be facially violative of Ohio law." Moreover, Kenwood argues, "the evidence, at trial * * * showed that Chrysler actually ignored its own policies."
Indirectly, this assignment, as Kenwood argues it, raises, in part, what the Ohio Automobile Dealers Association sets forth plainly in itsamicus curiae brief. As a friend of this court, the association has presented as an "assignment of error" the assertion that the trial court erred in finding that Kenwood had failed to prove a violation of R.C.4517.59 et seq.[1] The underpinning argument is that the SSA was "an adhesion contract" that had to be construed in Kenwood's favor, because R.C. 4517.59(I) did not grant Chrysler, as the manufacturer, an "unlimited right" to audit warranty claims.
As this record stands, we cannot and do not rule on the question whether the SSA was a contract of adhesion, because that issue was never raised below. Our review must be confined completely by the state of the record. See App.R. 12(A)(1)(b); State v. Ishmail (1978), 54 Ohio St.2d 402,377 N.E.2d 500, paragraph one of the syllabus ("A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter."). However "onerous" may have been the burdens placed upon Kenwood by the SSA, we find nothing in the record to refute the conclusion that the SSA was entered into freely by parties possessing equal business experience and equal bargaining power.
The aspect of the second assignment that we do address is the question whether Chrysler acted in good faith when conducting its audit.
Initially, we note that neither of Kenwood's assignments raises explicitly the question whether the court's findings on the issue of good faith were contrary to the manifest weight of the evidence. Ordinarily, the existence of good faith is a question of fact, but, in the end, the factual determinations must satisfy the statutory definition of the term provided in R.C. 4517.01(BB), which the parties agree is applicable.
Kenwood admitted at trial that Chrysler was contractually entitled to conduct the audit, and the court found in the letter of opinion that "nothing in the Ohio Revised Code prohibits the type of audit performed in this case." Kenwood obligated itself under the SSA not to use parts not authorized by Chrysler in performing repairs under Chrysler's warranties. Chrysler's brand name for its parts was, and is, Mopar. And, without question, Kenwood maintained an inventory that included a variety of such parts.
Kenwood's protests about Chrysler's conduct during the audit began with Chrysler's assumption that, at the beginning of the audit period, Kenwood had "zero parts in inventory." Consequently, Chrysler's method was, in Kenwood's words, to "proceed forward by counting the parts purchased by Kenwood and subtracting Kenwood's usages of Chrysler-approved parts." Chrysler responded to this protest by adducing evidence that Kenwood had failed to keep its inventory records; that some of the parts involved had not been manufactured prior to 1994; and that Kenwood had admitted that it had purchased and had used in its warranty repairs freon, cleaning agents, and lubricants obtained from sources other than Chrysler.
 In its letter of opinion, the trial court stated its resolution of Kenwood's lack-of-good-faith claim in these words:
 I * * * find that the provisions placing the burden of proof in an audit on the dealer is not unreasonable or in bad faith nor does it indicate a lack of good faith. The sound business reason for this is that the dealer, not the manufacturer, has the paperwork to justify the requested warranty reimbursement. The dealer has the customer contact. The dealer is the one who orders the parts and maintains an inventory. It is reasonable to audit a dealer to make sure dealers are properly performing under the terms of the agreement. With regard to warranty repairs and inventory maintenance, it is reasonable to place the burden of proof as the contract does on the dealer since it has the documents and it is the party seeking the financial reimbursement.
 The defendant's policies clearly state that if the dealer conducts a physical parts inventory, then that inventory should be retained. Here, the plaintiff performed such an inventory but then threw it away. When the defendant performed its audit, the records of inventory no longer existed. The plaintiff, unable to produce an inventory count and unwilling or unable to reconstruct the inventory based on existing records, left the defendant little choice but to adopt the inventory method it did. It was an imperfect solution that was caused by the plaintiff's actions. To hold otherwise would permit a dealer to frustrate any attempt by a manufacturer to conduct an audit. Placing the inventory at zero on 1-01-94 was not as inaccurate as initially portrayed since many of the parts for which chargebacks were made were not manufactured until after that date.
 I find that the defendant followed its own policies concerning the conduct of the audit. These policies were clearly communicated to the plaintiff well in advance of the audit. These policies g[a]ve the defendant considerable leeway in the conduct of the audit.
 There is within the record evidence that, when given credence, supports the trial court's factual determinations. By its own admission, Kenwood did not retain the "count sheets" and other inventory records that might have been vital to the reconstruction involved. Resultantly, the method adopted by Chrysler was, as the court observed, an "imperfect solution caused by the plaintiff [Kenwood]."
It is indisputable that on the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. See State v. DeHass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Upon review, it is axiomatic that, in a civil case, judgments supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. See C.E. Morris Co.v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. In sum, the second assignment of error is without merit, and is overruled, because the trial court's findings were supported by substantial, probative evidence to which the court gave credence, and its conclusions were not contrary to law.
Therefore, the judgment of the Hamilton County Court of Common Pleas is affirmed.
Gorman, P.J., Winkler and Shannon, JJ.
Raymond E. Shannon, retired, from the First Appellate District, sitting by assignment.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.
[1] Because it is not a party to this action, let alone an "aggrieved party," the association lacks standing to present an assignment of error to which this court must respond. See App.R. 12; Ohio ContractCarriers Assn., Inc. v. Pub. Util. Comm. (1942), 140 Ohio St. 160,42 N.E.2d 758, syllabus ("Appeal lies only on behalf of a party aggrieved by the final order appealed from.").